# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TODD MICHAEL SHUTT, | : | No. 3:18cv721 |
| Plaintiff | : | |
| | : | (Judge Munley) |
| v. | : | |
| | : | (Chief Magistrate Judge Schwab) |
| ANDREW M. SAUL, | : | |
| Commissioner of Social Security,[1] | : | |
| Defendant | : | |

..................................................................................................................

## **MEMORANDUM**

Before the court for disposition is Todd Michael Shutt's appeal of the final decision of the Commissioner of Social Security (hereinafter "Commissioner" or "defendant") denying his claim for Social Security Disability Insurance Benefits under Title II of the Social Security Act. Chief Magistrate Judge Susan E. Schwab issued a report and recommendation wherein she concludes that we should vacate the final decision of the Commissioner denying plaintiff's application and remand the case to the Commissioner pursuant to sentence four

---

[1] At the time the case was filed, the Acting Commissioner of Social Security was Nancy A. Berryhill, and thus, plaintiff named her as the defendant. Andrew M. Saul became the Commissioner of Social Security on June 17, 2019. See OFFICIAL SOCIAL SECURITY WEBSITE https://www.ssa.gov/agency/commissioner.html (last accessed July 10, 2019). Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, as the new Commissioner of Social Security, Andrew M. Saul is automatically substituted for the original defendant. FED. R. CIV. P. 25(d).

of 42 U.S.C. § 405(g). The Commissioner has objected to the R&R. The parties have briefed their respective positions, and the matter is ripe for disposition.

**Background[2]**

On November 11, 2014, plaintiff protectively filed an application for Disability Insurance Benefits contending that he became disabled on July 20, 2012. (Doc. 11-5, Administrative Record at (hereinafter "R. at") 146-47). Plaintiff listed in his disability report that brain damage, Chronic Obstructive Pulmonary Disease (hereinafter "COPD") and his back limit his ability to work. (R. at 177). The Commissioner denied plaintiff's claim at the initial level on January 13, 2015, and plaintiff requested an administrative hearing on February 17, 2015. (R. at 79-85). On December 21, 2016, with the assistance of counsel, plaintiff testified at a hearing before Administrative Law Judge (hereinafter "ALJ") Mike Oleyar. (R. at 37-68).

During the hearing, plaintiff was asked a series of questions about his living conditions, activities, and medical conditions. (R. at 42-61). Plaintiff testified that he lives with his wife, father-in-law, his youngest daughter, and his grandson. (R. at 43). He further testified that he was a certified auto mechanic, that he used to be in the Marine Corps, was previously a handyman, and that he worked in

---

[2] This background section is derived from the R&R with only minor stylistic change. (Doc. 23, R&R at 2-8). Neither party objected to the R&R's recitation of these facts.

2

commercial and residential construction prior to when he was a pipe fitter (R. at 44-46). Plaintiff testified that his "lungs are damaged, [he has] shortness of breath [and] no stamina." (R. at 48). He stated that he as "deteriorating discs in L2 and L5, and arthritis" that causes "constant pain." (Id.) He described his pain as follows: he "get[s] radiating pain out through [his] shoulder blades because [he] had a spinal compression at one time." (Id.) He testified that his "hands go numb . . . quite often" and that he cannot "pick any weight up with [his left] arm." (R. at 48-49).

Plaintiff testified that his knees "have given out . . but it has been a while since [they] have done that." (Id. at 49). He stated that he "can't stand for any extended period of time . . . maybe 15 minutes, [before he would need to] sit down." (Id. at 51). Plaintiff further testified that he "could walk about two blocks and have to take a break" and that he "could sit [for] an hour." (Id. at 51-52). He also indicated that he cannot "lift very much anymore because of [his] joints." (Id. at 52).

When asked by the ALJ if he had any problems with personal care, plaintiff testified that "[he] can do all [of] that." (Id. at 53). Plaintiff explained that his "wife and [his] daughter" do activities around the home, that his wife "doesn't like [him] using the stove because [he] forget[s] to turn it off," and that he does not clean, but he could "a bit" if he had to. (Id. at 53-54). As far as chores around the

3

house, plaintiff does laundry "maybe once a month," can do "some, but not much" grocery shopping, he takes out the trash, and his father-in-law does the yard work, but he can "go out and do some trimming with the weed whacker a bit." (Id. at 54).

Plaintiff testified that he "just can't remember anything" and that it is "almost worthless to read because [he] can't remember what [he] read." (Id. at 55). He stated that he doesn't sleep very well and that he "sleep[s] for about four hours at a time at most." (Id. at 55-56). When asked if he spends time outside his home, plaintiff answered that he "[goes] to [his] mom's house maybe on the weekends." (Id. at 56). When asked about any hobbies or activities that he used to be able to do that he is unable to do now, he stated that he does not bowl, play horseshoes, golf or hike anymore. (R. at 57). He belongs to the VFW and the Moose Lodge where he goes "maybe once a month." (Id.) He goes to church on Tuesday nights. (Id.) He has a driver's license, the he is able to drive, and he drives every day. (R. at 56-57). He has "a computer, but [he] [doesn't] have any [i]nternet access: and he is "not real good with it, but [he] can use it." (R. at 57). When asked about medications that he was currently taking, he stated that he is "on two inhalers and [] muscle relaxers." (R. at 58).

Plaintiff said that his typical day is spent on his recliner, watching TV, and helping to watch his grandson. He is, however, not often alone with his

4

grandson, who is nine months old. He can pick up his grandson, but it causes pain. (R. at 59). When he gets up, he walks out to the garage and listens to the radio for a while. (Id.) Nothing makes his symptoms better but lifting can cause his symptoms to flare up. (R. at 59-60). Even if he moves the wrong way, his back could go out and one time he fell to his knees from picking up a six-pack of water. (R. at 60).

In a December 19, 2014 function report, plaintiff stated that he cannot breathe as well as others or do any manual labor and that his back has a tendency to "go out whenever". (R. at 199). Arthritis in his knees and other joints severely limits his ability to move and lift. (Id.) He further stated that his pain has gradually gotten worse over time and is "continually [and] progressively worsening." (R. at 207).

On January 7, 2015, Spencer Long, M.D. performed a consultative examination of the plaintiff for Defendant Commissioner of Social Security. Dr. Long noted that plaintiff was diagnosed with COPD in 2012, uses inhalers and becomes short of breath after walking a flight of stairs or a city block, and has pain in his lumbar spine which at times radiates into his right hip. (R. at 280). Dr. Long further noted that plaintiff had a "history of a head injury when he was hit with a baseball bat" as well as "a compound fracture of the left lower leg [that

was] treated surgically, but without hardware." (Id.)  Plaintiff uses a cane as necessary.  (Id.)

Dr. Long diagnosed plaintiff with lower back pain, degenerative disc disease of the lumbar spine, history of head injury, with skull fracture and decompression of cervical discs, compound fracture of the left lower leg, and arthritis of the knees and elbow. (R. at 282-3).  He opined that plaintiff was limited to lifting and carrying twenty pounds occasionally and ten pounds frequently.  (R. at 284).  He stated that plaintiff could sit for eight hours in an eight-hour day or stand or walk for one hour in an eight-hour day.  (R. at 285).

Dr. Long further opined that plaintiff could frequently reach overhead with his hands in all directions; perform handling, fingering, feeling, pushing and pulling; operate foot controls with both feet; he could occasionally climb ramps and stairs, ladders and scaffolds; and that he could stoop, kneel, crouch, crawl, and balance. (R. at 287-88).  Dr. Long stated that plaintiff could occasionally be exposed to unprotected heights, humidity, and wetness but that he could frequently be exposed to moving mechanical parts and operating a motor vehicle.  (R. at 288).  Additionally, Dr. Long stated that plaintiff could never be exposed to dust, odors, fumes, irritants, extreme cold and heat, or vibrations.  (R. at 288).  Further Dr. Long opined that plaintiff could not perform activities like

shopping, he cannot travel without a companion for assistance, and he cannot walk a block at a reasonable pace on rough or uneven surfaces. (R. at 289).

The ALJ also considered the opinion of Laura Reilly, Certified Registered Nurse Practitioner (hereinafter "Nurse Reilly"). (See id. at 22-23). As of September 2016, Nurse Reilly indicated that she had been treating plaintiff for over the past six years for back pain and COPD. (R. at 295). She stated that his symptoms included "pain, weakness in [his] arms [and] shortness of breath." (Id.) She stated that plaintiff's pain was "in [his] low back, [it] is almost constant, [and is] aggravated by an motion or activity." (Id.) Nurse Reilly opined that plaintiff's impairments have lasted for at least twelve months, he must use a cane or other assistive device to stand or walk, and that he is not a malingerer. (Id.) She stated that he will need a job that permits shifting positions at will from sitting, standing, or walking and that he can lift and carry ten pounds rarely and less than ten pounds occasionally. (R. at 296).

Nurse Reilly stated that plaintiff could never stoop, crouch or climb ladders, rarely twist and occasionally climb stairs. (Id.) She stated that he could use his hands to grasp bilaterally 25% of the day, fingers for fine manipulation 100% of the day, and arms for reaching 10% of the day. (Id.) Additionally, she stated that his impairments are reasonably consistent with the symptoms and functional limitations and that his pain or other symptoms are severe enough to interfere

7

with his attention and concentration frequently. (R. at 297). She further concluded that plaintiff was capable of low stress jobs due to a combination of COPD and his chronic pain that may likely cause him to be absent from work more than four days per month. (Id.)

On March 7, 2017, the ALJ denied plaintiff's application for benefits in a written decision. (R. at 12-25). Plaintiff appealed the ALJ's decision to the Appeals Council on March 7, 2017, which denied his request for review on January 30, 2018. (R. at 1-5). This denial by the Appeals Council makes the ALJ's decision the final decision of the Commissioner subject to judicial review.

On April 3, 2018, plaintiff initiated this action by filing a complaint seeking a judgment for such relief as may be proper. (Doc. 1, Compl.). The Commissioner filed an answer on June 5, 2018. (Doc. 10). The Commissioner maintains that the decision denying benefits to plaintiff is correct and in accordance with the law and regulations, and that the Commissioner's findings of fact are supported by substantial evidence. The parties have filed briefs and the matter is ripe for decision.

**Jurisdiction**

This court has federal question jurisdiction over this social security appeal. See 42 U.S.C. § 1383(c)(3) ("The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial

review as provided in section 405(g) of this title to the same extent as the Commissiner's final determination under section 405 of this title."); see also 42 U.S.C. § 405(g) ("Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow. Such action shall be brought in the district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business. …").

**Discussion**

To receive disability benefits, the plaintiff must demonstrate an "inability to engage in any **substantial gainful activity** by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (emphasis added). An individual is incapable of engaging in "substantial gainful activity" when "his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education,

9

and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423(d)(2)(A).

The Commissioner evaluates disability insurance and supplemental security income claims with a five-step sequential analysis. 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4). This analysis requires the Commissioner to consider, in sequence, whether a claimant (1) is engaging in substantial gainful activity,[1] (2) has an impairment, or combination of impairments, that is severe,[2]

---

[1] "Substantial gainful activity" is work that "involves doing significant and productive physical or mental duties" and "is done (or intended) for pay or profit." 20 C.F.R. §§ 404.1510 and 416.910. If the claimant is engaging in "substantial gainful activity", the claimant is not disabled and the sequential evaluation proceeds no further.

[2] The determination of whether a claimant has any severe impairments that has lasted or is expected to last for a continuous period of at least twelve (12) months, at step two of the sequential evaluation process, is a threshold test. 20 C.F.R. §§ 404.1509, 404.1520(c) and 416.920(c). If a claimant does not have an impairment or combination of impairments which significantly limits his physical or mental abilities to perform basic work activities that has lasted or is expected to last for a continuous period of at least twelve (12) months, the claimant is "not disabled" and the evaluation process ends at step two. Id. If a claimant has any severe impairments, the evaluation process continues. 20 C.F.R. §§ 404.1520(d)-(g) and 416.920(d)-(g). Furthermore, all medically determinable impairments, severe and non-severe, are considered in the subsequent steps of the sequential evaluation process. 20 C.F.R. §§ 404.1523, 404.1545(a)(2), 416.923 and 416.945(a)(2). An impairment significantly limits a claimant's physical or mental abilities when its effect on the claimant to perform basic work activities is more than slight or minimal. Basic work activities include the ability to walk, stand, sit, lift, carry, push, pull, reach, climb, crawl and handle. 20 C.F.R. § 404.1545(b). An individual's basic mental or non-exertional abilities include the ability to understand, carry out and remember simple instructions, and respond

10

(3) has an impairment or combination of impairments that meets or equals the requirements of a "listed impairment,"[3] (4) has the "residual functional capacity" to return to his or her past work and (5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v) and 416.920(a)(4)(i)-(v). As part of step four, the administrative law judge must determine the claimant's residual functional capacity.[4] 20 C.F.R. §§ 404.1520(a)(4)(iv) and 416.920(a)(4)(iv).

Residual functional capacity is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. See SSR 96-8p, 1996 WL 374184. A regular and continuing basis contemplates full-time employment and is defined as eight hours a day, five days per week or other similar schedule. Id. The residual functional capacity assessment must include a discussion of the individual's abilities. Id.; 20 C.F.R.

---

appropriately to supervision, coworkers and work pressures. 20 C.F.R. § 1545(c).

[3] A "listed impairment" is one that appears on the Commissioner's Listing of Impairments, which is "a list of impairments presumed severe enough to preclude any gainful work." Sullivan v. Zebley, 493 U.S. 521, 525 (1990). If the claimant has an impairment, or combination of impairments, that meets or equals a listed impairment, the claimant is disabled. If the claimant does not have an impairment or combination of impairments that meets or equals a listed impairment, the sequential evaluation process proceeds to the next step.

[4] If the claimant has the residual functional capacity to do his or her past relevant work, the claimant is not disabled.

11

§§ 404.1545 and 416.945; Fargnoli v. Massanari, 247 F.3d 34, 40 (3d Cir. 2001) (defining residual functional capacity as that which an individual is still able to do despite the limitations caused by his or her impairment(s)).

In the instant case, the ALJ made the following findings in the applying the five-step sequential analysis:

Step One – Plaintiff had not engaged in substantial gainful activity since his alleged onset date of July 20, 2012; (R. at 14);

Step Two – Plaintiff has the following medically determinable severe impairments: chronic obstructive pulmonary disease ("COPD"), lumbar degenerative disc disease, a history of a skull fracture and head injury, decompression of cervical discs, a history of compound fracture of the lower leg and arthritis of bilateral knees and elbows. (Id.) The plaintiff has the non-severe impairments of gastro esophageal reflux disorder and insomnia. (R. at 14-15).

Step Three – Plaintiff does not have an impairment or combination of impairments that meet or medically equal an impairment listed in the version of 20 C.F.R. Pt. 404, Subpt. P, App. 1, in effect on the date of the decision. (R. at 17).

Plaintiff has a residual functional capacity (hereinafter "RFC") to perform light work with certain limitations. (Id.)

Step Four – Plaintiff is unable to perform his past relevant work. (R. at 23).

Step Five – Other jobs exist in significant numbers which the plaintiff can perform such as clerical assistant, parking garage cashier and product assembler I. (R. at 24-25).

Accordingly, the ALJ concluded that the plaintiff was not disabled under the Social Security Act. Plaintiff's appeal followed. Before the magistrate judge, the plaintiff argued that the ALJ erred and violated Agency policy and Third Circuit precedent by failing to analyze uncontroverted medical opinions. Plaintiff also argued that the ALJ erred in his credibility assessment of the plaintiff. The magistrate judge found the first of these issues had merit and was dispositive of the plaintiff's appeal. The government objects. After a careful review, we will adopt the R&R.

The examining doctor concluded that the plaintiff could stand a total of one hour in an eight-hour work day and walk a total of one hour in an eight-hour work day. (R. at 285). In his RFC, the ALJ concluded that this opinion is too restricting and that the plaintiff could walk or stand for six hours in an eight-hour work day.[3] (R. at 22). Thus, the RFC indicates that the plaintiff can in fact do

---

[3] Specifically with regard to the RFC, the ALJ concluded:

> [T]he claimant has the residual functional capacity to perform light work. The claimant is limited to lifting and carrying twenty pounds occasionally and ten pounds frequently, standing or walking six hours in an eight-hour workday and sitting six hours in an eight-hour workday.

13

more than the only doctor's opinion in the record concludes he can do. According to the R&R, the ALJ's decision is improper in "that the ALJ's RFC determination was an impermissible lay reinterpretation of medical evidence[.]" (Doc. 23, R&R at 19).

The Commissioner objects on the basis that the law permits an ALJ to find that a plaintiff can do more than the only doctor's opinion in the record indicates he can. We understand the Commissioner's position and assuming it is an accurate statement of the law, the ALJ's decision must nonetheless be supported by substantial evidence and comport with other aspects of the law.

The defendant further emphasizes that the ALJ is tasked with evaluating medical opinions, including opinions from treating physicians, state agency

---

> He can perform frequent using of foot controls with the bilateral lower extremities. He can do occasional balancing, stooping, kneeling, crouching, crawling, and climbing on ramps and stairs. He can do no climbing on ladders, ropes, or scaffolds. He can have occasional exposure to wetness and humidity. He can never be exposed to atmospheric conditions, extreme cold, heat, vibration, and hazards such as unprotected heights and moving machinery. He is limited to simple, routine, repetitive tasks. He can do frequent reaching (in all directions) handling, fingering and feeling bilaterally. The claimant requires a sit stand option.

(R. at 17).

consultants and medical examiners. The ALJ must determine whether these opinions are supported by and consistent with the rest of the record. See 20 C.F.R. § 404.1527(c). It is not proper for a reviewing court to reweigh the evidence or impose its own factual findings. Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 359 (3d Cir. 2001).[4]

It is also the law, however, that the an ALJ may not reject uncontradicted medical opinions based on only lay reinterpretation of the medical evidence. Ferguson v. Schweiker, 765 F.2d 31 (3d Cir. 1985). In Ferguson, the court found that "the ALJ acted improperly in disregarding the opinions of [the treating physician] by finding them contrary to the objective medical evidence contained

---

[4] The defendant raises several other issues. For example, in its brief, the defendant states that where "the opinion of treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit but cannot reject evidence for no reason or for the wrong reason. Coleman v. Comm'r of Soc. Sec. Admin., 494 Fed. App'x 252, 254 (3d Cir. 2012). This law, however, is not at issue in this case. There is no conflict between a treating physician and a non-examining consultant. In fact, the treating certified nurse practitioner's opinion is in line with the opinion of the agency's consultant - who in fact examined the plaintiff and was not a non-examining consultant

The defendant also cites to Brown v. Astrue, 649 F.3d 193 n.2 (3d Cir. 2011) for the proposition that the opinion of a treating physician does not bind the ALJ on the issue of functional capacity. Once again, this law is irrelevant to the case. No treating physician provided a medical opinion. The treating nurse did, and as the ALJ pointed out a nurse practitioner is not considered to be an "acceptable medical source" but rather falls within the category of "other sources" as defined by 20 C.F.R. 404.1513(d) and 416.913(d).

15

in the file.  By independently reviewing and interpreting the laboratory results, the ALJ impermissibly substituted his own judgment for that of a physician; an ALJ is not free to set his own expertise against that of a physician who presents competent evidence." Id. at 37.

Here, the ALJ found that the plaintiff could perform light work, which is a conclusion inconsistent with the conclusions of Dr. Long, who examined the plaintiff on the Commissioner's behalf and the conclusion is also inconsistent with the conclusions of the certified nurse practitioner[5] who treats the plaintiff.  We must decide if the ALJ's analysis amounts to appropriate evaluation of the medical opinions or an inappropriate substitution of his own lay opinion or "expertise" for the medical provider's opinions.

---

[5] A nurse practitioner is not considered to be an "acceptable medical source" but rather falls within the category of "other sources" as defined by 20 C.F.R. 404.1513(d) and 416.913(d). See McGowan v. Astrue, Case No. 1:12–CV–75, 2013 WL 693234 at *7 (E.D.Tenn. Feb. 8, 2013) (While a nurse practitioner is not considered an acceptable medical source under Social Security Regulations, such sources may be relied upon to assess the severity of impairments without violating the treating source rules under §§ 404.1527(d)(2) and 416.927(d)(2)). A treating nurse practitioner's opinion is generally reviewed in the same manner as an acceptable medical source.  The difference, however, is that an ALJ would not necessarily give controlling weight to a nurse practitioner because she is not an "acceptable medical source".

16

The government argues that the ALJ properly found that Dr. Long's opinion on the plaintiff's ability to stand and walk was too restrictive. This conclusion regarding Dr. Long's opinion is based on the "utter lack of abnormal objective findings" on Dr. Long's examination and other examinations of record. The government cites to the full medical record for this assertion, except for Dr. Long's evaluation and the treating nurse's evaluation. The ALJ made a similar assertion but made no specific citation to the medical records at all.

Indeed, the record does not support the ALJ's conclusions. Plaintiff has suffered from low back pain for years predating the onset of the disability. (See, e.g., R. at 232, Medical Treatment Record indicating back pain). Moreover, as early as July 3, 2012, a doctor diagnosed plaintiff with COPD and chronic bronchitis. (R. at 266). In 2013, he continued to suffer from COPD and prescribed daily medicine for it. (R. at 260). In 2015, he continued to be treated for back pain and COPD, it was noted that he had a history of deteriorating discs in his back (R. at 309) and he also had shortness of breath caused by minimal exertion due to the COPD. (Id.) The record indicates that plaintiff's COPD and/or his back pain limit his ability to walk and stand.

Despite the medical evidence, the ALJ decided to reject the limitations found by the examining physician and treating nurse because plaintiff's complaints "are not medically documented and supported by the medical

17

evidence." (R. at 23). We find that the ALJ engaged in an improper lay analysis of the medical records. Here, no medical source indicates that any particular objective evidence should be found in the medical record to support the severity of the plaintiffs COPD, back pain and resultant difficulty walking. The ALJ merely concludes that the records should reflect more "medical evidence" to support plaintiff's claim. The ALJ does not explain how he reached this conclusion. Thus, we must conclude that it is his "lay opinion" and interpretation of the plaintiff's medical records. We find that this analysis is an improper rejection of a medical opinion based upon the ALJ's own interpretation of the medical records.[6]

In other words, the ALJ examined the medical records in the case. Then he reviewed the undisputed conclusions of the agency examining physician and the treating nurse. He concluded based on his own "expertise" that the records do not support what the other professionals who examined/treated the plaintiff found. This conclusion is not supported by substantial evidence, and the plaintiff's appeal will be granted.

---

[6] It would be a different situation if a medical source had indicated that if the plaintiff's limitations were as severe as he claimed then certainly specific objective findings should be present in his medical records. If the ALJ then examined the records and they did not contain the findings as set forth by the medical source, then he could find that the medical records do not support the plaintiff's claim.

18

**Conclusion**

Based upon the above analysis, the record does not provide substantial evidence for the ALJ to provide limited weight to the examining physician and the plaintiff's treating nurse.  In short, the ALJ improperly applied his lay analysis of the medical records to come to a conclusion that is inconsistent with the undisputed medical expert, treating nurse and remainder of the medical records. Because the ALJ did not provide appropriate weight to the evidence, he did not properly calculate the plaintiff's RFC.  Accordingly, the plaintiff's appeal will be granted.  The commissioner's decision will be vacated and the matter will be remanded for to the commissioner for a new administrative hearing pursuant to 42 U.S.C. § 405(g).   An appropriate order follows.

**Date:  Sept. 27, 2019**              **BY THE COURT:**

                                       **s/ James M. Munley**
                                       **Judge James M. Munley**
                                       **UNITED STATES DISTRICT COURT**